IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.  05-1081-WEB |
| ) | |
| Defendant No. 1:  ONE 2004 FORD F150 ) | |
| 4 DOOR, 4X4 PICKUP, VIN: ) | |
| 1FTPW145X4KC59906, WITH ALL ) | |
| ATTACHMENTS THEREON, ) | |
| ) | |
| Defendant No. 2:  CONTENTS OF ) | |
| ST. VRAIN CREDIT UNION ACCOUNT ) | |
| NO. 142136S1 STYLED AS SAMUEL R. ) | |
| MORENO, CONTAINING $67,159.92, ) | |
| MORE OR LESS, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| v. ) | |
| ) | |
| SAMUEL R. MORENO, ) | |
| ) | |
| Claimant. ) | |
| ) | |

**Memorandum and Order**

The United States brought this action for *in rem* forfeiture of the defendant properties pursuant to 21 U.S.C. 881(a)(4) and (a)(6).  The complaint alleges that the defendant No. 1 Ford F-150 was used to facilitate the transportation and sale of cocaine, and/or that it was purchased with proceeds of drug trafficking.  Doc. 1. The complaint alleges that the defendant No. 2 Credit Union Account containing $67,159.92 constitutes proceeds from drug trafficking and/or was intended to be used to facilitate drug trafficking.  *Id*.  The court previously authorized warrants for arrest of the defendant properties based upon the Government's showing of probable cause for forfeiture.  Doc. 4.  Claimant Samuel Moreno has filed verified petitions claiming ownership of the defendant

properties and asserting that they were lawfully obtained. Docs. 6, 7. Notice of the proposed forfeiture was published and the complaint was served upon known potential claimants. Docs. 9, 10. The court subsequently granted the United States' motion for partial default as to all persons other than claimant Samuel R Moreno. Doc. 28. The matter is now before the court on the United States' Motion for Summary Judgment. The court finds that oral argument would not assist in deciding the issues presented.

I. *Uncontroverted Facts*.

The court finds the following facts are uncontroverted for purposes of summary judgment. The court notes that claimant's response attempts to controvert some of the following facts, but he fails to provide any evidentiary support for his contentions or else he merely cites to his contentions in the Pretrial Order. Such a response is not sufficient to genuinely controvert a fact. *See Topalian v. Ehrman*, 954 F.2d 1125, 1138 (5th Cir. 1992) (contentions in a pretrial order are not competent summary judgment proof).

1. On January 11, 2005, claimant Samuel Moreno (also known as Samuel Rogelio Moreno-Miramontes) was convicted of violating 21 U.S.C. 843(b) and was sentenced on April 5, 2005, to 48 months imprisonment in Case No. 04-10218 in U.S. District Court for the District of Kansas.

2. The factual basis for claimant's conviction is as follows. In September 2004, a Drug Enforcement Administration (DEA) confidential informant had several telephone conversations with claimant, including a call on September 20, 2004, which originated in Kansas. During this telephone call, claimant agreed to deliver five kilograms of cocaine to Kansas for a price of $19,000 per kilogram. On September 22, 2004, claimant arrived in Wichita, Kansas, in a GMC Yukon. A co-defendant, Gerardo Trujillo-Chavez, arrived in a Chrysler Concorde. Claimant met with the

informant and indicated he was ready to distribute the cocaine. Both vehicles were stopped and searched. Inside Trujillo's car were five kilograms of cocaine. Trujillo-Chavez admitted he knew he had transported the cocaine to Wichita, Kansas, and that claimant was to distribute the cocaine.

3. Claimant was a resident of Colorado.

4. Before driving to Wichita on September 22, 2004, claimant drove the defendant pickup truck to Ulysses, Kansas, from Colorado. Claimant parked the defendant truck at a residence belonging to a relative named Mariselia Perez. Claimant then drove Perez's GMC Yukon to Wichita.

5. At the time of the seizure, Mariselia Perez was driving the defendant truck.

6. Claimant purchased the defendant truck in Colorado on February 12, 2004, from Valley Ford Inc., a Ford dealership in Longmont, Colorado, for $37,778.35. Claimant paid $500 down on February 12, 2004, and then paid $15,000 on March 6, 2004, with the remaining balance due on March 19, 2004.

7. The defendant No. 2: $67,159.92 was seized from St. Vrain Valley Credit Union, Longmont, Colorado, account number 142136S1, styled as Samuel R. Moreno.

8. Claimant and his spouse reported total income of $11,636 and three children on their 2000 tax return.

9. Claimant and his spouse reported total income of $12,585 and three children on their 2001 tax return.

10. Claimant did not file a tax return for 2002.

11. Claimant and his spouse reported total income of $7,950 and four children on their 2001 tax return.

12.  On February 16, 2004, claimant purchased a minivan from Pollard Friendly Motor Company for $5,750 cash plus a trade-in vehicle.

13.  In its Order of Detention Pending Trial, Case No. 04-10218, the Court found that neither claimant nor his wife could tell a Pretrial Services officer the name of claimant's purported employer.

14.  The Presentence Report for claimant in Case No. 04-10218 stated that claimant reported having no assets or liabilities.

15.  On September 22, 2004, in Ulysses, Kansas, Grand County Sheriff's Deputy Chad Harmon deployed his certified narcotics K-9 around the outside of defendant No. 1 Ford pickup.

16.  The narcotics K-9 alerted twice to the odor of controlled substances emanating from the Ford pickup, once on the passenger side, and once in the undercarriage area between the cab and the bed.

II.  *Motion for Summary Judgment*.

The United States argues the uncontroverted facts show that claimant used the Ford F-150 to travel from Colorado to Kansas to deliver five kilograms of cocaine.  It contends the pickup is thus subject to forfeiture under 21 U.S.C. § 881(a)(4), regardless of whether the truck was actually used to transport the cocaine.  Moreover, it argues the positive dog sniff of the Ford F-150 would allow the court to conclude that the pickup was used at some point to transport the cocaine.  The United States further argues that both the pickup truck and the defendant $67,159.92 credit union account are subject to forfeiture under § 881(a)(6) because the evidence shows claimant did not earn enough legitimate income to purchase the pickup (for $37,778.35) or to amass the sum of $67,159.92 in his credit union account.

The standards and procedures for summary judgment are well established. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). In essence, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id*. A disputed fact is "material" if it might affect the outcome of the suit under the governing law, and a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

Under Rule 56, the moving party initially bears the burden of making a prima facie showing of the absence of a genuine issue of material fact and an entitlement to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)*; Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 670 (10th Cir.1998). Once the moving party carries this burden, the opposing party cannot simply rest upon the pleadings; it must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). The court must examine the evidence on a motion for summary judgment in the light most favorable to the non-moving party. *Jones v. Unisys Corp.*, 54 F.3d 624, 628 (10th Cir. 1995).

III. *Discussion*.

Section 881(a)(4) of Title 21 makes forfeitable to the United States any vehicle which is used, or intended to be used, to transport or in any manner to facilitate the transportation, sale, receipt, possession or concealment of a controlled substance manufactured, distributed or acquired in violation of Title 21's enforcement provisions. Section 881(a)(6) makes forfeitable any monies furnished or intended to be furnished by a person in exchange for a controlled substance, or which

are proceeds traceable to such an exchange, or which were used or intended to be used to facilitate any such violation. Courts have determined that the language of § 881(a)(6) allows forfeiture of a vehicle purchased with proceeds of unlawful drug transactions because this section applies to moneys "or other things of value" constituting proceeds traceable to an exchange for a controlled substance. *See United States v. One 1990 Chevrolet Corvette*, 37 F.3d 421 (8th Cir. 1994).

In a suit under any civil forfeiture statute, the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture. *See* 18 U.S.C. § 983(c)(1).[1] The Government may use evidence obtained after the filing of the complaint to meet its burden. § 983(c)(2). If the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government must establish that there was a substantial connection between the property and the offense. § 983(c)(3); *See also United States v. $84,615 in U.S. Currency*, 379 F.3d 496, 501 (8th Cir.2004) (applying CAFRA's standards to forfeiture action brought under 21 U.S.C. § 881(a)(6)).

An innocent owner's interest in property is not subject to forfeiture. 18 U.S.C. § 983(d). The claimant has the burden of proving an innocent owner defense by a preponderance of the evidence. The term "innocent owner" in this context means an owner who did not know of the conduct giving rise to forfeiture, or who upon learning of the conduct giving rise to the forfeiture did all that reasonably could be expected under the circumstances to terminate such use of the property. *Id*.

A. *Defendant Ford F-150*. The United States has cited uncontroverted evidence that on

---

[1] The preponderance standard was adopted by the Civil Asset Forfeiture Reform Act (CAFRA) of 2000. Previously the Government only had to show "probable cause" for the forfeiture. *See United States v. Wagoner County Real Estate*, 278 F.3d 1091, 1097 n.5 (10th Cir. 2002).

6

September 20, 2004, claimant Samuel Moreno was living in the Denver, Colorado area, when he agreed in a telephone call with a confidential source to sell five kilograms of cocaine for $19,000 per kilo and to deliver the cocaine to Wichita, Kansas, on September 22, 2004. It cites uncontroverted evidence that claimant (and others) traveled in the defendant Ford F-150 from Colorado to Ulysses, Kansas. Claimant left the F-150 in Ulysses with a relative, Mariselia Perez, and borrowed Perez's GMC Yukon to drive to Wichita. Claimant (and others) proceeded to Wichita in the GMC Yukon. According to a Government affidavit, the Government's confidential source met with claimant in Wichita on September 21, 2004, at which time claimant said he was waiting for the vehicle containing the cocaine to arrive in Wichita. Doc. 1, Exh. A at 4. On September 22, 2004, claimant met with the confidential source at an agreed-upon place. Claimant arrived at the meeting in the GMC Yukon, while another individual, Gerardo Trujillo-Chavez, arrived in a Chrysler Concorde bearing a Colorado license plate. Claimant told the confidential source the cocaine was in the car, and they agreed to go to a garage to remove the cocaine. As they were leaving, agents made a traffic stop of both vehicles and arrested a total of seven individuals. Agents found the five kilos of cocaine hidden in a compartment in a wheel well of the Chrysler Concorde driven by Trujillo-Chavez. Later the same day, September 22, 2004, a Deputy Sheriff in Grant County, Kansas, conducted a "dog-sniff" of the Ford F-150 using a certified narcotics K-9. The dog alerted twice on the vehicle, once on the passenger side and once in the undercarriage area between the cab and bed of the pickup.

The Government cites evidence that claimant purchased the defendant Ford F-150 new in Colorado on February 12, 2004, from a Ford dealership in Longmont, Colorado. Claimant paid $500 down on February 12, 2004. He then paid $15,000 on March 6, 2004, and paid the remaining

balance on or about March 19, 2004.  Claimant also purchased a minivan from another dealer on February 16, 2004, for $5,750 in cash plus a trade-in vehicle.  The Government cites evidence that claimant and his spouse reported total income of $32,171 on their income tax returns for the entire four-year period from 2000 to 2003 ($11,636 in 2000 (with three children);  $12,585 in 2001; they filed no tax return in 2002; and $7,950 total income in 2003 (with four children)).  Claimant's tax returns indicate he additionally received a total of $6,471 in refunds from the Government during this same four-year period under the Earned Income Credit.

      The uncontroverted facts cited by the Government show more likely than not that the Ford F-150 was purchased with proceeds obtained in exchange for controlled substances.  The Government's evidence shows claimant paid for the Ford F-150 with checks totaling more than his cumulative reported income for the entire four-year period preceding his purchase of the vehicle.  It also shows that he purchased another vehicle during the same period by paying over $5,000 in cash -- thus spending over $40,000 in cash on vehicles immediately following two years in which he reported total income of $7,950.  Additionally, claimant had over $67,000 in his credit union account in September of 2004, at the same time he was agreeing to sell five kilos of cocaine for $95,000.  Taken as a whole, the Government's evidence shows a strong probability that claimant lacked sufficient legitimate income to make the cash purchase of the Ford F-150.  It also shows that claimant had a willingness and ability to engage in a substantial cocaine deal for a large sum of cash not long after his purchase of the vehicle.  Taken together, the United States's uncontroverted evidence shows more likely than not that the Ford F-150 was purchased by claimant with proceeds from drug trafficking prohibited by Title 21.

      Claimant, who is represented by counsel in this matter, has filed a response challenging the

United States' motion for summary judgment. In support of his response, claimant attached his April 20, 2006, sworn answers to interrogatories from the United States. In his interrogatory answers claimant denied ever having bought or sold drugs or transporting currency in excess of $1,000 in the last five years. When asked to state the source of all funds used to purchase the pickup truck, claimant wrote that "Me and my two brothers bought the truck with three checks and trade[d] in a 1998 Toyota pickup truck." When asked why he contended the truck was legally obtained, claimant stated it was because he did not buy the truck with drug money. When asked to list each job he had for the last five years, and to identify each employer by name, address and telephone number, and the dates for beginning and ending each job, claimant stated simply: "1: I had my own dump truck and worked for Terry Dump Trucks Company, Chavez Company. 2- Terry Farmer, Marcos Chavez." When asked to state the highest amount of gross monthly wages for each job, claimant stated: "In a month I used to make about 8000 dlls." When asked to list and describe with particularity all documentary evidence regarding his claim to the defendants, claimant wrote: "I got the title of my truck and a bunch of [receipts] and my check stubs from [where] I used to work." When asked to state all sources of the $67,159.92 and identify all persons having any right or interest in the money, claimant stated: "I have the right for my money and do does my wife and children." When asked to list any other income received in the last three years, including proceeds from the sale of real property, specifying for each the name and address of the person or entity from which the income was received, claimant wrote simply: "I sold some property I had in Mexico for $35,000." In response to the next subsection asking for the dates and amounts of income received, claimant indicated that he received $1,700 in 2001, $2,150 in 2002, $1,800 in 2003, and $1,250 in 2004. When asked to state the reason the income was paid to him or his spouse, claimant stated: "I

got the income paid to me [because] I worked for it." When asked to identify all persons who have information to support his defenses to the forfeiture action, claimant wrote: "I don't have anybody." When asked to state in detail why he contended the money in his account was legally obtained, claimant stated: "The 67,159.92 ... is from some property I sold in Mexico and checks that I deposit[ed] in the bank every week I got paid at work." In an interrogatory asking him to state the monthly averages for his living expenses, claimant listed items totaling at least \$1,950 per month[2] (i.e., \$23,400 annually) for the year 2003, including \$975 monthly rent.

Plaintiff has failed to cite any substantial probative evidence that the pickup truck was not purchased with proceeds of drug trafficking. Claimant's response on this point arguably includes three assertions. First, claimant stated in an interrogatory answer that he did not buy the truck with drug money. Such a conclusory assertion without any evidentiary support, however, cannot forestall a properly supported motion for summary judgment. *See L & M Enters. v. BEI Sensors & Sys. Co.*, 231 F.3d 1284, 1287 (10th Cir.2000) (Unsupported conclusory allegations do not create a genuine issue of fact sufficient to survive summary judgment). Second, claimant stated in an interrogatory answer that he bought the truck together with his two brothers. This assertion too is without any detail or evidentiary support in the record. Claimant's brothers have asserted no interest in the truck, and claimant stated in his interrogatories that he had no one who could provide information to support his defenses to the forfeiture. Claimant has produced no documentary evidence whatsoever to support the assertion, nor has he produced any bank records, checks or receipts suggesting that the source of the funds used to buy the truck was anything other than proceeds from drug trafficking.

---

[2] Claimant additionally listed a monthly expense of \$1,800 for furniture, however the court has excluded that figure from the above averages.

*Cf. United States v. 15 Black Ledge Drive*, 897 F.2d 97, 102 (2d Cir.1990) (claimant's conclusory allegations without a scintilla of supporting evidence were insufficient to prevent judgment as a matter of law); *United States v. Lot 9, Block 2 of Donnybrook Place*, 919 F.2d 994, 998 (5th Cir. 1990) (claimant's general denial of culpability, which failed to controvert any of the facts alleged by the government, could not defeat motion for summary judgment). Claimant's general statement that he and his brothers bought the truck is not sufficient to show a genuine issue of fact for trial as to the source of the money used to buy the Ford F-150. Finally, claimant's third assertion pertaining to the Ford F-150 appears to be that he purchased the vehicle with legitimate income from his job or from the sale of real property in Mexico. Like the two allegations above, however, claimant fails to cite any evidence from which one could reasonably infer that the truck was not purchased with proceeds from drug trafficking. The Government's evidence shows that claimant and his spouse reported income in 2003 of $7,950. By claimant's own estimation, his annual living expenses for that same year were at least $23,400. And yet, despite this apparent deficit of over $10,000 for 2003 (and similar shortfalls in preceding years), claimant spent $40,000 on two vehicles in February of 2004. Claimant's only potential explanation for this in his interrogatory answers is that he "used to make about 8000 [dollars]" a month "driving my dump truck" and that he "sold some property I had in Mexico for $35,000." Neither of these assertions is sufficient to raise a genuine issue of fact for trial. As an initial matter, claimant's interrogatory answers did not even fully answer the questions put to him. Claimant failed to provide addresses or telephone numbers or state the dates during which he worked for his purported employers "Terry Dump Trucks" and "Chavez Company." When he was asked to list and describe with particularity all documentary evidence pertaining to his claim, claimant simply stated that he had a "bunch of [receipts] and "check stubs from [where]

11

I used to work at." Significantly, in response to summary judgment claimant has produced no such documentary evidence, nor has he cited any evidence to explain how it is that he that he supposedly received $8,000 in monthly income at a time when he reported less than $8,000 annual income on his tax return. Similarly, claimant's statement that he "sold some property ... in Mexico" failed to address the Government's interrogatory request to disclose "the name and address of the person or entity from which the income [from any sale of real property] was received." Claimant's response to summary judgment includes no evidence to show the actual existence or ownership of such property, the sale of such property, or the source of the funds obtained from the purported sale. Again, claimant has simply failed to cite evidence genuinely controverting the Government's showing that the Ford F-150 was likely purchased with proceeds traceable to drug trafficking. Nor has he cited any evidence tending to show the existence of a defense to forfeiture.

Once the moving party on summary judgment has met its burden of production, the non-moving party cannot rest on its pleadings, but must present significant probative evidence in support of its position to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). Because claimant has failed to do so here, the United States is entitled to summary judgment on its claim for forfeiture of the defendant pickup truck pursuant to 21 U.S.C. § 881(a)(6).

In view of the court's determination that the United States is entitled to forfeiture of the defendant Ford F-150 under § 881(a)(6), the court need not rule on the United States' alternative arguments for forfeiture of the vehicle pursuant to § 881(a)(4). The court notes, however, that there may be a genuine issue of fact as to whether the Ford F-150 was actually used to transport the cocaine involved in this transaction. Although the dog sniff of the F-150 tends to show the vehicle

was used at some point to transport controlled substances, there is also evidence that after claimant left the F-150 in Ulysses he told the confidential source in Wichita on September 21 that he was waiting for a car containing the cocaine to arrive, and the following day the cocaine was found in a hidden compartment in a Chrysler Concorde bearing Colorado plates. Absent some evidence tending to show that the cocaine involved in this deal was transferred from the F-150 to the Concorde, summary judgment would appear to be inappropriate on the question of whether the F-150 actually transported the cocaine. Similarly, it would likely be necessary to hear the surrounding circumstances to determine whether claimant's use of the F-150 to travel part of the way to Wichita, standing alone, satisfies the Government's burden of showing that the vehicle facilitated the sale of the cocaine and that "a substantial connection between the property and the offense" exists as required by § 983(c)(3). *Cf. Platt v. United States*, 163 F.2d 165, 167 (10th Cir. 1947) (use of vehicle was not subject to forfeiture where it was "merely the means of locomotion" used to travel to the scene of a drug purchase). *But see United States v. One 1979 Porsche Coupe*, 709 F.2d 1424, 1427 (11th Cir. 1983) (forfeiture appropriate where vehicle was used to transport the pivotal figure in the transaction several hundred miles to the precise location *where the attempted drug purchase took place*); *United States v. One 1987 Ford F-350 4X4 Pickup*, 739 F.Supp. 554 (D. Kan. 1990) (distinguishing *Platt*). As noted above, however, the court need not rule on these issues because summary judgment for forfeiture of the vehicle is appropriately granted under § 881(a)(6).

B. <u>*Defendant Credit Union Account containing $67,159.92*</u>. The Government likewise has cited uncontroverted evidence showing that the $67,159.62 in claimant's credit union account more likely than not constitutes proceeds traceable to an exchange for a controlled substance. As noted by the court above, the Government has cited evidence that claimant's declared income during the

13

several years preceding seizure of this account was nowhere near sufficient to explain the existence of such a large sum in his account. Moreover, during this same period claimant spent some $40,000 on two automobiles. The Government's evidence shows that in September of 2004 claimant was willing to arrange a large-scale sale of cocaine worth $95,000, and that he was able to procure 5 kilos of cocaine in preparation for such an exchange. The Government has also provided other uncontroverted evidence tending to refute claimant's assertions of legitimate employment. For example, it cites evidence that after claimant was arrested, he gave law enforcement officers contradictory and unsubstantiated answers in response to questions about his employment and address. Doc. 24, Exh. F at 2; Doc. 1, Exh. A at 6-7. Neither claimant nor his wife could tell a Pretrial Services Officer the name of claimant's purported employer. *Id.* The Government provides evidence that law enforcement agents searched state wage records but were unable to find any records matching the information provided by claimant. Doc. 1, Exh. A at 7-8. In response to claimant's statements or documents representing that he operated his own business under the name of Moreno Trucking or Moreno Concrete, agents checked and determined that claimant had no registered business trucks or vehicles in the state of Colorado. They also conducted credit inquiries and found no record of Moreno Trucking or Moreno Concrete. *Id.* The only reasonably inference from the record now before the court is that claimant had no legitimate source of income or funds that could explain the sum in his credit union account. *Cf. United States v. Funds from Prudential Securities*, 362 F.Supp.2d 75, 81 (D.D.C. 2005) (the substantial discrepancy between claimant's accountable legitimate income and the defendant funds satisfied the Government's burden on summary judgment). Taken together with the Government's uncontroverted evidence of claimant's involvement in September 2004 in a large-scale sale of cocaine for $95,000, the record now before

14

the court shows more likely than not that the contents of the account constituted proceeds from the sale of controlled substances.

Claimant's response fails to demonstrate a genuine issue of fact as to whether the $67,159.92 contents of the credit union account is subject to forfeiture. For the reasons indicated above, claimant's attempts to suggest or allude to other possible sources of income are unsubstantiated. Claimant cites no specific evidence tending to show that such funds came from any source other than drug trafficking. *Cf. Claimant's Response*, Doc. 29 at 2 (arguing that money in a bank account "can come from sale of property and from loans from other people" and "money earned that is not reported is not drug money"). He offers no evidence of bank or employment records to show the source of the money. Claimant cites no substantial evidence from which a fact-finder could reasonably conclude that the money likely came from such other sources. *See Funds from Prudential Securities*, 362 F.Supp.2d at 82 (claimant's assertion of legitimate income was unsubstantiated "with even a shred of evidence"). As noted above, unsupported conclusory assertions that claimant "sold some property" or that he "used to make about 8000" dollars a month do not create a genuine issue of fact. As the Supreme Court observed, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249-50 (1986) [citations omitted]. Claimant's arguments about other potential sources of the money in the account are based on little more than vague and unsubstantiated conjecture. *Cf. United States v. Parcel of Land and Residence*, 896 F.2d 605, 611 (1st Cir. 1990) (claimants' materials were "too flimsy" to support a reasonable inference in their favor).

One of the primary purposes of the summary judgment rule is to isolate and dispose of

factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In light of the United States' uncontroverted evidence showing that the defendant properties were likely obtained with or constitute proceeds of drug trafficking, claimant has the burden to set forth specific facts showing there is a genuine issue for trial. Claimant's response, however, fails to cite evidence from which a reasonable fact-finder could conclude that the defendant properties are not subject to forfeiture or that a defense to forfeiture exists. Accordingly, the court finds that the United States' Motion for Summary Judgment should be granted.

IV. *Conclusion*.

Plaintiff United States' Motion for Summary Judgment (Doc. 24) is hereby GRANTED. The United States shall prepare, circulate and submit an appropriate order of forfeiture and form of judgment for the Court's approval. IT IS SO ORDERED this   4th   Day of January, 2007, at Wichita, Ks.

s/Wesley E. Brown

Wesley E. Brown
U.S. Senior District Judge